WILLIAM A. DIBBLE AND SAMUEL E. FRINK v. WILLIAM
H. WOODHULL'S EXECUTOR.

The court will not interfere and prevent the payment of money raised
by an execution upon a judgment against the executor of an insolvent
estate, if no proceedings have been taken before the orphans' court to
declare the estate insolvent. Until such proceeding is had, judgment and
execution creditors are entitled to be paid out of the estate according to
their legal priority.

This was a motion on behalf of execution creditors, for the
payment to them of money raised from the estate of a testator
by a prior execution on a judgment against the executor.

Argued before Justice POTTS by Mr. *Blauvelt* for Dibble
& Frink, and Mr. *R. Adrain* for the executor of Woodhull.

POTTS, J.    This is a contest among execution creditors.
By agreement between the attorneys representing the differ-
ent claimants, the question was argued before me at chambers
at the last Middlesex Circuit, they not having been prepared
to submit the argument during the session of the Supreme
Court.    The question has become somewhat complicated,
and arises out of a singular state of facts, which it will be
necessary to give in detail.

On the fourth of November, eighteen hundred and fifty-
two, *Dibble & Frink* recovered a judgment in the *Supreme
Court* against William H. Woodhull, for one thousand five
hundred and fifty-seven dollars and twenty-five cents, on
which a balance of four hundred and three dollars and sixty-
eight cents remains due with interest and costs.    Woodhull
died in March, eighteen hundred and fifty-three, having by
will appointed his son, William M. Woodhull, his executor,
who proved the will in Morris county, *but took no further
steps towards administering the estate.*    No execution having
issued upon the original judgment, the judgment was revived
by *sci. fa.* against the executor, and an execution issued
against him in Morris county, and was returned *nulla bona*
in February term, eighteen hundred and fifty-four.    A *tes-*

*tatum fi. fa.* was then issued to the sheriff of Middlesex, which was placed in his hands *May sixteenth, eighteen hundred and fifty-four,* and upon which he returned, at June term next, that he had levied on certain goods and chattels of the deceased in the hands of the executor, subject to prior incumbrances to the value of one dollar. The levy was made on the *third of June, eighteen hundred and fifty-four.*

On the *fourth of November, eighteen hundred and fifty-three, Mott, Weaver & Co.* recovered a judgment in the *Middlesex Circuit,* against the executor of said William H. Woodhull, deceased, for seven hundred and eighty-seven dollars and nineteen cents; and *Johnes, Beekman & Company,* on the *eighth of November, eighteen hundred and fifty-three,* recovered a judgment in the same court, against the same party, for eleven hundred and fifty-six dollars and seventy-eight cents, of which amount five hundred and ninety-nine dollars and eighty-four cents was realized from another party—leaving the balance still unsatisfied.    Executions were issued on the two last named judgments, which were placed in the hands of the sheriff of Middlesex, and in November, eighteen hundred and fifty-three, by virtue thereof, he levied on the same goods afterwards levied on as aforesaid, under the Dibble & Frink execution.

It appears, therefore, that the two last executions were issued, placed in the hands of the sheriff, and levied on the goods, a considerable time prior to the issuing of the Dibble and Frink executions; and they have the undoubted priority over that execution, unless there is something in the facts of the case which takes it out of the statutory rule.    *Rev. St.* 977, *sec.* 3.

When the sheriff proceeded to levy on the goods under the executions of Mott, Weaver & Company, and Johnes, Beekman & Company, he was met by two parties, *Bradford & Company* and *Joseph Howell,* who set up a claim to the goods under a *private bill of sale from the executor,* who had in this way undertaken to dispose of the whole assets of the estate to these parties, alleging themselves to be creditors at large of the estate.    Being indemnified, however, by these

two execution creditors, he levied on the goods. Bradford & Company, and Howell, thereupon replevied the goods took them from the sheriff, and carried them to New York, having first given bonds pursuant to the statute.

The replevin suit between Bradford & Company, and the sheriff was brought to trial before the Middlesex Circuit at *May term, eighteen hundred and fifty-four*. It appeared upon the trial that the goods belonged to the estate, that the estate was *insolvent*, and that the executor *knew it to be so* when he executed the bill of sale; and the jury having been instructed by the court that the executor had no right thus to dispose of the assets in his hands, a verdict was rendered for the sheriff, upon which the goods were returned to his custody.

It was not until the goods had been so returned that they were levied on by virtue of the Dibble and Frink execution.

After the verdict had been rendered as aforesaid in the first replevin suit, the other action of replevin brought by Howell, being noticed and on the paper, was called, but the counsel for Howell declined to go on with the cause, and asked a postponement; whereupon, on the suggestion of the court, an agreement was entered into by the attorney for the execution creditors in the judgments in the circuit, and the attorney of Howell, that the executions should be stayed until the further order of the court, in order that an opportunity might be afforded to the creditors to take steps to have the estate of the decedent put in course of administration according to law.

But soon after the adjournment of the court, the execution at the suit of Dibble and Frink, issued out of the supreme court, and which had been placed in the hands of the sheriff after the trial and verdict, was pressed, and he was ordered to levy and sell under that execution; whereupon the attorneys for Mott, Weaver & Company and Johnes, Beekman & Company, considering themselves absolved from the agreement by this new phase in the case, ordered the sheriff to sell under those executions also.

The sheriff sold under the three several executions, ac-

cording to the priority of the levies, and raised about five hundred and twelve dollars from the property.

Upon the motion of the counsel for Dibble and Frink, a rule was entered at the June term last, ordering the money so raised to be brought into this court.

The motion now is for an order to pay this money, or so much of it as may be required, over to the plaintiffs, Dibble and Frink, upon their judgment in this court.

I am not able to see upon what principle this motion can be granted.

The executor and the creditors have stood by and permitted the property to be sold under the executions. The court has no notice, judicially, that this is an insolvent estate. The executor put in no plea of want of assets. The statute in reference to the administration of insolvent estates relates to the jurisdiction of the orphans' court, and that jurisdiction has not been invoked.

The case is governed, as it stands here, by the statute in reference to executions, and the sale of personal property by virtue thereof. The executions in the circuit court have the priority under this statute. They were first in the hands of the sheriff—first levied—and the money actually raised under them. The replevy and proceedings consequent upon it did not divest the sheriff of his lien under the original levy. As the amount of money raised is not sufficient to satisfy the judgments in the circuit, the judgment of Dibble and Frink does not reach any part of it. The motion must be denied with costs.

And I see no reason why, upon the application of the sheriff, a rule should not be entered upon the clerk to pay the fund over to him, to be applied according to law.